UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| |
|---|
| CYPRUS MINES CORPORATION, |
| |
| Plaintiff, |
| |
| v. |
| |
| M & R INDUSTRIES, INC., f/k/a |
| M & R REFRACTORY METALS, INC., |
| f/k/a METEC, INC., |
| |
| Defendant. |

Civ. A. No. 14-04590
(NLH)(KMW)


**OPINION**

**APPEARANCES:**
KEITH E. LYNOTT
MCCARTER & ENGLISH, LLP
FOUR GATEWAY CENTER
100 MULBERRY STREET
NEWARK, NJ 07102
     On behalf of Plaintiff


HILLMAN, District Judge

     Presently before the Court is the motion of Plaintiff,

Cyprus Mines Corporation (Cyprus Mines), for default judgment

against Defendant, M & R Industries, Inc. (M & R).  Cyprus Mines

contends that, as a result of the discharge of hazardous

substances by M & R at a site located in Winslow Township, New

Jersey (the Metec Site), and failure of M & R to remediate the

Metec Site in the manner required, it has incurred damages and

costs under 42 U.S.C. §§ 9607 and 9613 (Comprehensive

Environmental Response, Compensation and Liability Act,

1

("CERCLA")) and the New Jersey Spill Compensation and Control
Act, N.J.S.A. 58:10-23.11 to 23.-24 (the "Spill Act").  Cyprus
Mines also alleges a breach of contract claim and breach of
indemnification agreement in light of M & R's failure to perform
obligations assigned to it under the parties' Purchase
Agreement.  Cyprus Mines seeks damages, contribution, and a
declaratory judgment.  For the reasons expressed below, Cyprus
Mines' motion for default judgment will be granted.

### Background

Cyprus Mines is a Delaware Corporation with its principal
place of business in Phoenix, Arizona.  It is the successor to
Cyprus Metec Corporation, a Delaware corporation and former
owner/operator of the Metec Site.  Cyprus Metec Corporation
merged into Cyprus Mines in July, 1995.

M & R is a Delaware corporation with its principal place of
business in Greenwich, Connecticut.  It is registered as a
foreign corporation authorized to do business in New Jersey,
with a principal place of business in Winslow, New Jersey.  M &
R is the successor entity to Metec Inc., the former
owner/operator of the Metec Site that sold the area and
operation to Cyprus Mines.

Beginning in 1967, M & R owned and operated the Metec Site,
manufacturing metal products.  In 1987, Cyprus Mines acquired

2

the site and operation from M & R.  Before the purchase, Cyprus
Mines performed due diligence and learned that M & R had
installed two unlined ponds on the Metec Site ("Lagoons") to
receive process waste from its hearth roaster operation.
Throughout M & R's operation of the Metec Site, it discharged
ammonium sulfate solutions containing hazardous substances into
these Lagoons.  According to the N.J. Department of
Environmental Protection ("NJDEP") Directive and Notice to
Insurers ("Directive"), the substances discharged by M & R are
considered "hazardous" under the Spill Act, N.J.S.A. 58:10-
23.11b.  Because M & R failed to install an impervious layer at
the bottom of the Lagoons, hazardous substances seeped into
local groundwater and were released into the environment.

     As part of Cyprus Mines' acquisition of the Metec Site, M &
R agreed to discontinue its discharge into the Lagoons, be
solely responsible for complying with the requirements of the
New Jersey Environmental Cleanup Responsibility Act (ECRA)
N.J.S.A. 13:1K-6 (now, the Industrial Site Recovery Act
("ISRA")), and to defend, indemnify, and hold harmless Cyprus
Mines against all associated liabilities.  Cyprus Mines and M &
R executed the Purchase Agreement on October 31, 1986, in which
the Metec Site and operation thereon would be transferred to

Cyprus Mines.[1]

On January 9, 1987, M & R entered into an Administrative
Consent Order (ACO) with the NJDEP in which it agreed to
investigate the Metec Site and implement a NJDEP approved
cleanup plan.

The initial Purchase Agreement (dated October 31, 1986),
the Amendment (dated January 14, 1987), and the Indemnification
Agreement (dated January 14, 1987), together, comprise the
"Purchase Agreement" in which M & R agreed to indemnify Cyprus
Mines for all costs, losses and expenses relating to the Site.
Section 10(b) of the Purchase Agreement provides that M & R
shall be liable and solely responsible for the obligations and
liabilities associated with its ownership of the Metec site
arising out of events that occurred prior to closing, including
those claims related to environmental health and safety matters.
Section 10(c) further provides that M & R shall retain present,

---

[1] The M & R entities underwent a number of name changes and
mergers throughout the relevant time period.  M & R Industries,
Inc., as the then corporate parents of Metec Inc., guaranteed
the performance of Metec Inc.  Metec Inc. then changed its name
to M & R Refractory Metals, Inc.  On January 14, 1987, M & R
Refractory Metals, Inc., M & R Industries, Inc., and Cyprus
Mines entered into an Amendment to the 1986 Agreement, pursuant
to which M & R Industries assumed all rights, obligations, and
liabilities of the Seller under the 1986 Agreement.
Subsequently, M & R Refractory Metals, Inc. merged into M & R
Industries, Inc.  M & R Industries, Inc. as successor to M & R
Refractory Metals, Inc., executed a separate Cyprus Mines
Indemnification Agreement dated January 14, 1987, in which M & R
further agreed to indemnify Cyprus Mines.

4

and assume future, obligations to comply with ECRA, DEP and
NJPDES obligations as they relate to its discharges into the
Lagoons. This obligation consists of performing physical work
and making any necessary filings.

Section 2 of the Amendment provides that M & R assumes all
rights, obligations and liabilities under the Purchase
Agreement, specifically those under the ECRA and DEP.  Section
1(c) of the Indemnification Agreement, provides that M & R shall
retain and assume all present and future obligations to comply
with ECRA, NJDEP, and NJPDES requirements with respect to its
ownership and operation of the Metec Site and discharge of
substances to the Lagoons.

The Purchase Agreement, Amendment, and Indemnification
Agreement also contained indemnification clauses.  Section 11(a)
of the Purchase Agreement provided that Seller shall forever
indemnify, defend and hold harmless Buyer from liabilities and
responsibilities arising out of the liabilities and obligations
retained and assumed by Seller.  Section 2 of the Amendment
provided that M & R would assume all rights, obligations, and
liabilities of Seller under the Purchase Agreement, including
obligations under the ECRA, DEP, and ACO.  Section 2(a) of the
Indemnification Agreement provided that M & R would indemnify,
defend and hold harmless Cyprus Mines for responsibility and
liability arising out of obligations retained by M & R.  These

representations form the basis of Cyprus Mines' claims.

Cyprus Mines owned the Metec Site until October 21, 1994; it then sold the Site to H.W.R. Corporation, a third party. On December 9, 1994, M & R reported that it was performing its obligations under the ACO. In March 2009, Cyprus Mines received a Directive issued by NJDEP (addressed to M & R, Cyprus Mines, and H.W.R.) indicating that M & R had failed to satisfy its obligations under the ACO. The Directive stated that the groundwater beneath the Metec Site was contaminated by ammonia, nitrate, molybdenum, selenium, and sulfate, and the contaminated groundwater had migrated into a residential area. The Directive stated that, although M & R had been working on remedial cleanup of the site for the past twenty years (following the sale of the site to Cyprus Mines), it never completed its remedial investigation. The Directive requested that M & R, Cyprus Mines, and H.W.R. conduct a remedial investigation and implement an approved Remedial Action plan at the contaminated site.

On August 6, 2009, Cyprus Mines sent a written Claim for Indemnification Pursuant to the Purchase Agreement to M & R, stating that the Directive sent by NJDEP on March 16, 2009 constituted an indemnified claim under the Purchase Agreement. Cyprus Mines demanded that Metec Inc. and its parent/successor M & R fully defend, indemnify, and hold harmless Cyprus Mines against all damages, liabilities, obligations, claims, costs and

expenses associated with the NJDEP Directive.  Cyprus Mines did not receive a response from M & R.

Again, on April 9, 2014, Cyprus Mines sent M & R a letter reiterating its claims as set out in the March 16, 2009 Claim Letter, notifying M & R that it intended to pursue treble damages under N.J.S.A. 58:10-23.11f(a)(3) of the Spill Act. Cyprus Mines did not receive a response from M & R.

Finally, on July 21, 2014, Cyprus Mines filed this complaint against M & R as a means to coerce M & R to honor its commitments under the Purchase Agreement and reimburse Cyprus Mines for damages incurred.  Cyprus Mines also seeks a declaratory judgment outlining M & R's responsibilities.  Cyprus Mines contends that, as a result of M & R's failure to fulfill its obligations under the Purchase Agreement and ECRA, Cyprus Mines has incurred substantial cost and expense in complying with the Directive.  It has conducted an investigation and outlined a remediation plan for the site, incurring costs for preparing and submitting required forms, investigating and evaluating the environmental conditions of the site, and identifying other potentially responsible parties.  Cyprus Mines' investigation has revealed ammonia contamination of groundwater and molybdenum contamination of soil near the Lagoons.

The affidavit of Ronald J. Buchanan, Manager, Remediation

Projects, for Freeport-McMoRan, Inc., produced by Cyprus Mines, outlines the costs that Cyprus Mines has incurred to date. These costs amount to over two million dollars and include legal and consulting fees, travel and administrative costs, and a $135,000 submission that NJDEP required Cyprus Mines to place in a Remediation Funding Source trust account.  Cyprus Mines contends that it will continue to incur costs associated with its response, investigation, and remediation of the Site because of M & R's breach of the Purchase Agreement.

## Discussion

### A. Jurisdiction

Because Cyprus Mines asserts claims under 42 U.S.C. §§ 9607 and 9613, this Court has original jurisdiction over the subject matter of this dispute.  Cyprus Mines' claims under the New Jersey Spill Act, and for indemnification and breach of contract, are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy.  As such, this Court has supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367(a).

### B. Default

The first step in obtaining a default judgment is the entry of default.  "When a party against whom a judgment for

affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the Clerk must enter the party's default." FED. R. CIV. P. 55(a). The Clerk entered default against M & R on August 25, 2014.

### C. Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). However, a party seeking default judgment "is not entitled to a default judgment as of a right." Franklin v. Nat'l Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992). The decision to enter a default judgment is "left primarily to the discretion of the district court." Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

Although every "well-pled allegation" of the complaint, except those relating to damages, are deemed admitted, Comdyne I. Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a default judgment the Court must decide whether "the

9

unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law," Chanel, 558 F. Supp. 2d at 535 (citing Directv, Inc. v. Asher, No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006)).  In assessing a motion for default judgment, a court should accept as true all well-pled factual allegations in the complaint, except for allegations relating to the amount of damages.  Dempsey v. Pistol Pete's Beef N Beer, LLC, No. CIV 08-5454, 2010 WL 2674436, at *4 (D.N.J. June 29, 2010).  These allegations must contain assertions of fact sufficient to demonstrate liability.  Id. at *5.

Once a valid claim has been asserted, "three factors control whether a default judgment should be granted: (1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). If a review of the complaint demonstrates a valid cause of action, the Court must then determine whether plaintiff is entitled to default judgment in light of these three factors.

**D. Declaratory Judgment**

Pursuant to 28 U.S.C. § 2201, a district court may declare

10

the rights and other legal relations of any interested party
seeking a declaration upon the filing of an appropriate
pleading.  This declaration has the force and effect of a final
judgment.

**E. Analysis**

Before assessing the factors that control whether default
judgment should be granted, the court must determine if Cyprus
Mines has asserted legitimate causes of action.

**1. Cost Recovery and Contribution under 42 U.S.C. §§ 9607(a) and
9613(f)**

Cyprus Mines contends that M & R is liable under 42 U.S.C.
§ 9607(a) for the response costs that Cyprus Mines has, and will
continue to, incur in connection with the Metec Site.  The Third
Circuit has outlined four elements to claims under 9607(a).  A
plaintiff must prove that (1) the defendant is a "responsible
party;" (2) the hazardous substances were disposed of at a
"facility;" (3) there is a "release" or threatened release of
hazardous substances from the facility into the environment; and
(4) the release causes the incurrence of "response costs."
United States v. Alcan Aluminum Corp., 964 F.2d 252, 258-59 (3d
Cir. 1992).

Section 9607(a)(2) defines "responsible party" as "any

11

person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substances were disposed of." During M & R's operation of the Metec Site, it discharged hazardous substances into its unlined Lagoons, which then seeped into local groundwater. Because M & R owned and operated the Metec Site when hazardous substances were "disposed of" from it, M & R is a "responsible party" under § 9607(a)(2).

Section 9601(9) defines "facility" to mean "any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located." Because the Metec Site, while operated by M & R, contained a Lagoon in which hazardous substances were "deposited, stored, and disposed of," it is considered a "facility" under § 9601(9).

Section 9601(22) defines "release" as any "spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment." Because hazardous materials contained within the Lagoons at the Metec Site escaped or leaked into the environment, such discharge is considered a "release" under § 9601(22).

Section 9601(25) defines the terms "respond" and "response" to mean "remove, removal, remedy, and remedial action." Because Cyprus Mines attempted to remedy the release of hazardous

12

substances from the Metec Site through investigation,
consultation, and execution of a remedial action plan, their
conduct is considered "respons[ive]" under § 9601(25).

Because the factual allegations asserted by Cyprus Mines,
and uncontested by M & R, satisfy the four requirements for
liability under § 9607(a), M & R is held liable, according to §
9607(a)(4), for: (a) costs of removal or remedial action
incurred by the U.S. Government, or State government, or Indian
tribe not inconsistent with the national contingency plan; (b)
any other necessary response costs incurred by any other person
consistent with the national contingency plan; (c) damages for
injury to, destruction of, or loss of natural resources,
including the reasonable costs of assessing such injury,
destruction, or loss resulting from such a release; and (d) the
costs of any health assessment or health effects study carried
out under section 9604(i) of this title.

Cyprus Mines' claim focuses on the costs referenced in
subsection (b), the necessary costs of response incurred by
Cyprus Mines consistent with the national contingency plan.
One of the purposes of the national contingency plan is to
outline the procedures for responding to discharges of
hazardous substances. 40 C.F.R. § 300.1. It applies to
"releases into the environment of hazardous substances, and
pollutants or contaminants which may present an imminent

and substantial danger to the public health." Id. § 300.3.
Cyprus Mines contends that, in responding to the discharge
of hazardous substances, and doing so in accordance with
the requirements of NJDEP, it has incurred costs arising
out of its investigation and remediation of the site.
These costs reflect legal and consulting fees, travel and
administrative costs, and the $135,000 that NJDEP required
Cyprus Mines to place in a Remediation Funding source trust
account.  Absent any argument by M & R, these costs appear
reasonable in light of the requirements of the national
contingency plan. See 40 C.F.R. § 300.400-300.440.

Section 9613(f)(1) provides that any person may seek
contribution from any other person who is liable or
potentially liable under § 9607(a).  Because M & R has been
deemed liable under § 9607(a), Cyprus Mines' request for
contribution under § 9613(f) is appropriate.  In resolving
contribution claims, the court may allocate response costs
among liable parties using such equitable factors as the
court determines are appropriate.  42 U.S.C. § 9613(f)(1).
The Third Circuit imposes strict liability on parties that
have violated § 9607(a).  Alcan Aluminum Corp., 964 F.2d at
259 (citing 42 U.S.C. § 9601(32)).


**2. New Jersey Spill Compensation and Control Act**

Cyprus Mines seeks a declaratory judgment that M & R is liable to it under N.J.S.A. 58:10-23(g)(c)(1) for cleanup and removal costs. Cyprus Mines also seeks treble damages under N.J.S.A. 58:10-23.11fa3.

N.J.S.A. 58:10-23.11g(c)(1) provides for strict liability for any person who has discharged a hazardous substance, or is in any way responsible for the discharge of a hazardous substance, without regard to fault, for all cleanup and removal costs no matter by whom incurred. A party is responsible for a discharge if it owned the property at the time of the discharge and there is a reasonable nexus between the discharge and the contamination of the site. Litgo New Jersey Inc. v. Comm'r New Jersey Dep't of Envtl. Prot., 725 F.3d 369, 392 (3d Cir. 2013).

"Person" here includes any public or private corporation, company, association, firm, individual, agency, or partnership. N.J.S.A. 58:10-23.11b. "Discharge" means "any intentional or unintentional action or omission resulting in the releasing, spilling, leaking, pumping, pouring, emitting, emptying or dumping of hazardous substances into the waters or lands of the State." Id.

Because M & R, a company, discharged hazardous substances into its unlined-Lagoons, and allowed those hazardous substances to escape and leak from its premises, it is liable for the cleanup of, and removal costs for, that discharge under the New

15

Jersey Spill Act.  M & R owned the Metec Site when it discharged
hazardous substances into its Lagoons.  There is also a
reasonable nexus between the discharge of this hazardous waste
and the contamination of the area, because the contaminants held
inside the Lagoon seeped into nearby groundwater, polluting it.

N.J.S.A. 58:10-23.11f(a)(2)(a) provides the right of
contribution from responsible parties to persons who have
cleaned up or removed a discharge.  In an action for
contribution, the plaintiff "need prove only that a discharge
occurred for which the contribution defendant or defendants are
liable."  N.J.S.A. 58:10-23.11f(a)(2)(a).  To be successful in a
New Jersey Spill Act claim for contribution, the plaintiff must
prove that the defendant was, in any way, responsible for the
discharge of the hazardous substance, and that the plaintiff
engaged in a cleanup or removal of the substance.  Preferred
Real Estate Investments, Inc. v. Edgewood Properties, Inc., No.
CIV. 06-4266 (AET), 2007 WL 81881, at *2 (D.N.J. Jan. 9, 2007).

Because M & R is liable for the discharge of hazardous
waste from the Metec Site, and because Cyprus Mines is the
"person" who cleaned up and removed the discharge, Cyprus Mines
may seek contribution from M & R.  Cyprus Mines' complaint
details this cleanup and removal of hazardous substances, which
was done in compliance with NJDEP orders.

N.J.S.A. 58:10-23.11fa3 provides a contribution plaintiff

16

the opportunity to file a claim with the court for treble
damages.  Treble damages may be awarded if: (a) the defendant
was named on a directive issued by the department and refused to
comply with it; (b) the plaintiff gave 30 days' notice to the
defendant of his/her intention to seek treble damages, giving
the defendant an opportunity to participate in the cleanup; (c)
the defendant failed to enter into a settlement agreement with
the plaintiff; and (d) the plaintiff, after giving notice to the
Department, commenced remediation of the site or entered into an
agreement with the Department to do so.  N.J.S.A. 58:10-
23.11fa3.  Upon the award of treble damages, pursuant to
N.J.S.A. 58:10-23.11fa3, one third of the treble damages must be
paid to the NJDEP for deposit into the New Jersey Spill
Compensation Fund.  The remaining two thirds are to be shared by
the contribution plaintiffs in the proportion to the
responsibility and cleanup costs that they incurred.

Here, the requirements for awarding treble damages have
been met: NJDEP named M & R on its Directive and Notice to
Insurers (dated March 16, 2009); Cyprus Mines sent M & R a
letter on April 9, 2014 notifying M & R of its intent to pursue
a claim for treble damages against it; M & R neither responded
to the letter nor participated in cleanup thereafter; through M
& R's non-response, it has failed to enter into a settlement
agreement with Cyprus Mines; and Cyprus Mines has complied with

17

the Directive by conducting an investigation and remediation of
the Metec Site.  As a result, an award of treble damages is
appropriate.

**3. Breach of Contract and Indemnification Agreement**

   Cyprus Mines and M & R agreed that their Purchase Agreement
would be construed and interpreted in accordance with New Jersey
law.  To state a claim for breach of contract in New Jersey, a
plaintiff must show that (1) the parties entered into a valid
contract; (2) the defendant failed to perform his duties under
the contract; and (3) plaintiff sustained damages as a result of
the breach.  Lincoln Harbor Enterprises, LLC v. M.Y. Diplomat,
No. CIV 08-526(WHW), 2008 WL 5046787, at *5 (D.N.J. Nov. 21,
2008) (citing Murphy v. Implicito, 920 A.2d 678, 689 (N.J.
Super. Ct. App. Div. 2007)).  In New Jersey, "a contract of
indemnity is to be interpreted in accordance with the rules
governing the construction of contracts generally."  Cozzi v.
Owens Corning Fiber Glass Corp., 164 A.2d 69, 71 (N.J. Super.
Ct. App. Div. 1960).  As such, to state a claim for breach of
the indemnification agreement, Cyprus Mines must demonstrate the
existence of a valid indemnification agreement, failure by M & R
to perform its duties under the agreement, and resulting
damages.

   The unchallenged facts in Cyprus Mines' complaint

18

constitute legitimate claims for breach of contract and breach
of indemnification agreement.  Cyprus Mines and M & R entered
into a Purchase Agreement (October 31, 1986), the Amendment
(January 14, 1987), and the Indemnification Agreement (January
14, 1987), which, together, comprise the "Purchase Agreement."
Under these agreements, M & R agreed to indemnify Cyprus Mines
for all costs, losses or expenses relating to the Site.  M & R
agreed to retain, guarantee, and assume the obligations to
comply with the requirements of ECRA and agreed that Cyprus
Mines would not assume present or future rights, obligations,
liabilities, or claims that arise from pre-closing use of the
Lagoons.  M & R guaranteed this performance and assumed the
obligations listed.

     M & R breached these contractual obligations by failing to
adequately and completely investigate and remediate the Metec
Site pursuant to Section 10 and 11 of the 1986 Agreement,
Sections 2 and 3 of the 1987 Amendment, and Sections 1 and 2 of
the Indemnification Agreement.  M & R has also failed to satisfy
its obligation of adequate investigation and remediation
pursuant to ECRA and ISRA directives.  As such, it is in breach
of the Purchase Agreement.

     As a result of M & R's breach, Cyprus Mines has incurred
compensatory damages, including the cost of consultants,
testing, investigation, and remediation.  In light of this

agreement, its accompanying obligation, and the failure of M & R
to fulfil such, M & R is found to be in breach of the Purchase
Agreement, Amendment, and Indemnification Agreement and liable
for the resulting damages.

Going forward, M & R must defend, indemnify, and hold
harmless Cyprus Mines in matters regarding the remediation of
the Metec Site.  Pursuant to the parties' agreement, M & R must
also fulfill its remediation obligations.


**4. Whether Default Judgment is Appropriate**

Once a legitimate cause of action has been stated, a court
must decide if the plaintiff is entitled to a default judgment.
In doing so, it must consider (1) prejudice to the plaintiff if
default is denied, (2) whether the defendant appears to have a
litigable defense, and (3) whether defendant's delay is due to
culpable conduct.  Chamberlain, 210 F.3d at 164; United States
v. $55,518.05 in U.S. Currency, 728 F.2d at 195.  The Third
Circuit does not favor defaults; in a close case, doubts should
be resolved in favor of setting aside the default and reaching a
decision on the merits.  Gross v. Stereo Component Systems,
Inc., 700 F.2d 120, 122 (3d Cir. 1983) (citing Farnese v.
Bagnasco, 687 F.2d 761, 764 (3d Cir. 1982)).  Where, however, a
properly served defendant has failed to defend itself against
plaintiff's claims, it must expect that a judgment may be

entered against it.  Ford v. Consigned Debts & Collections, Inc., No. 09-3102, 2010 WL 5392643, at *4 (D.N.J. December 21, 2010).

The Third Circuit has instructed district courts, when deciding the issue of prejudice, to view the defendant's failure to answer the complaint in the context of its failure to answer any claim or correspondence from the plaintiff over an extended period of time.  Hritz, 732 F.2d at 1182.  A plaintiff will be prejudiced absent a default judgment where, due to the defendant's continued failure to respond to plaintiff's claims, the plaintiff is left with no other recourse.  Ford, 2010 WL 5392643 at *4.

Cyprus Mines has taken action to notify M & R of its request for indemnification via correspondence (letters dated August 6, 2009 and April 9, 2014) but has received no response. Cyprus Mines' complaint has also gone unanswered.  Because M & R, over the course of five years, has yet to respond to Cyprus Mines' letters or this complaint, entrance of default judgment is Cyprus Mines' only form of relief.  If default judgment were denied and not entered against M & R, Cyprus Mines would be prejudiced.

A defendant is found to have a litigable defense if the allegations contained in its answer, if established on trial, would constitute a complete defense to the action.  Colony Ins.

21

<u>Co. v. Kwasnik, Kanowitz & Assocs., P.C.</u>, No. 1:12-CV-00722 NLH, 2014 WL 2920810, at *6 (D.N.J. June 27, 2014).  Absent M & R's responsive pleadings, the Court is unable to readily ascertain any meritorious defenses that would be available to M & R at this time.

For conduct to be culpable, it must be executed willfully or in bad faith.  <u>Feliciano v. Reliant Tooling Co., Ltd.</u>, 691 F.2d 653, 657 (3d Cir.1982)).  Neglect alone cannot sustain a default judgment.  <u>Hritz</u>, 732 F.2d at 1183.  Cyprus Mines' complaint provides that its letters and notifications to M & R were delivered.  The August 6, 2009 letter was delivered to M & R on August 11, 2009, and the April 9, 2014 letter was delivered to M & R at two different addresses on or about April 14, 2014 and April 21, 2014.  There is nothing before the Court to suggest that M & R's failure to respond to Cyprus Mine's repeated attempts at communication is caused by anything other than M & R's own culpability.  In light of this lack of response, and absent any contest by M & R, the Court assumes M & R's inaction was done willfully and in bad faith.

**F. Damages and Relief Sought**

If damages sought at default judgment are not for a "sum certain or for a sum which can by computation be made certain, the court may conduct such hearings or order such references as

22

it deems necessary and proper." FED. R. CIV. P. 55(b)(1)-(2).  A "court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to conduct an accounting [or] determine the amount of damages."  Id.

Although Cyprus Mines has provided an affidavit outlining the expenses it has incurred as a result of M & R's inaction and breach of their agreements, the amount of these expenses is not supported or substantiated by any invoice, receipt, or accounting.  As such, the Court will delay an award of damages in conjunction with the entry of default judgment against M & R until Cyprus Mines submits a supplemental declaration of its damages, which shall include supporting documentation and a proposed form of order on judgment.


### Conclusion

For the reasons expressed above, Cyprus Mine's motion for default judgment must be granted.  A hearing regarding Cyprus Mines' claim for contribution and monetary damages will be scheduled.  An appropriate Order will be entered.


Date:  March 30, 2015            __s/ Noel L. Hillman_____
                                 NOEL L. HILLMAN, U.S.D.J.


At Camden, New Jersey


23